## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **AMEY DUDLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action Number** |
| | ) | **4:17-cv-01424-AKK** |
| **NANCY A. BERRYHILL,** | ) | |
| **Commissioner, SSA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Amey Dudley brings this action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court affirms the decision.

### I.      Procedural History

Dudley worked previously as an order processor until she stopped working in August 2014 due to her alleged disability. R. 361-362. Dudley filed her application for Disability Insurance Benefits ("DIB") on August 19, 2014, asserting a disability due to chronic back, neck, and knee pain as well as anterior

cruciate ligament ("ACL") reconstruction surgery, migraines, and fluid around her heart. R. 200. After the SSA denied her application, Dudley requested a formal hearing before an ALJ. R. 127. Ultimately, the ALJ entered a decision finding that Dudley was not disabled. Doc. 7-5 at 36. The Appeals Council affirmed, rendering the ALJ's decision the final decision of the Commissioner. R. 1. Having exhausted her administrative remedies, Dudley filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 13.

## II. Standard of Review

First, federal district courts review the SSA's findings of fact under the "substantial evidence" standard of review. 42 U.S.C. §§ 405(g), 1383(c); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings, even if the evidence preponderates against the Commissioner. *Id.*

Credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). However, "[t]he testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary," and the failure of the Secretary "to specify what weight is given to a treating physician's opinion and any reason for giving it no weight" constitutes reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Courts have found good cause to discount a treating physician's report when it is "not accompanied by objective medical evidence, . . . wholly conclusory," or "inconsistent with [the physician's] own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). In contrast to the opinion of a treating physician, "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

Second, federal courts review the SSA's conclusions of law de novo, *see Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir. 1987), and "[f]ailure to apply the correct legal standards is grounds not for remand but, for reversal." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). No presumption attaches to either the ALJ's choice of legal standard or to the ALJ's application of the correct legal standard to the facts. *Id.*

Finally, reviewing courts have the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added).

## III. Statutory and Regulatory Framework

An individual applying for DIB bears the burden of proving that she is disabled. *Moore*, 405 F.3d at 1211. To qualify, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520. Specifically, the Commissioner must determine, in sequence:

(1)    whether the claimant is doing substantial gainful activity;
(2)    whether the claimant has a severe impairment;
(3)    whether the impairment meets or is medically equivalent to one listed by the Secretary;
(4)    whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy, based on his residual functional capacity.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work, the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.     The ALJ's Decision

The ALJ applied the five-step analysis for DIB claims, *see McDaniel*, 800 F.2d at 1030, and found that Dudley satisfied step one because she had not engaged in substantial gainful activity since August 18, 2014.  Doc. 7-5 at 41.  At step two, the ALJ found that Dudley has "severe impairments" caused by (i) status post ACL repair/reconstruction of the left knee with bursitis; (ii) status post microdiscectomy, secondary to herniation, lumbar spine with residual bulge causing slight impairment of the exiting nerve root without herniation; (iii) degenerative disc disease, desiccation; and (iv) small annual tear and broad base disc bulge, lumbar spine, without impingement and possible lumbar radiculopathy.  *Id.* (citing 20 C.F.R. § 404.1520(c)).  However, the ALJ found that Dudley's history of non-obstructing kidney stones, hypertension, anemia, headaches,

infrequent palpitations, cardiomyopathy, and dyspnea were not "severe disabling impairments" because Dudley lacked chest X-ray abnormalities, was able to work at the time she made these complaints, received clearance from a "cardiac standpoint" for back surgery in March 2015, and offered no further reports of required treatment for heart-related symptoms. *Id.* at 42-44. The ALJ similarly found that Dudley's "questionable history" of depressive disorder, anxiety, insomnia, and pain disorder with a psychological factor were not "severe disabling impairments" because Dudley never sought mental health treatment and had normal cognitive functioning. *Id.* at 42-43. At step three, the ALJ concluded that Dudley's impairments did not meet the severity or medically equal the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 for major dysfunction of joints, § 1.03 reconstruction surgery of a major weight-bearing joint, and § 1.04 for spine disorders. *Id.* at 44; R. 200-206. Next, the ALJ determined Dudley's residual functional capacity ("RFC") and found that Dudley can "perform light work" with limitations on standing, sitting, climbing, crawling, working in unventilated areas and unprotected heights, extreme climates, and hazardous machinery. *Id.* at 44-45. (citing 20 C.F.R. §§ 404.1529 and 1527). Based on the RFC, and relying on the testimony of a vocational expert ("VE"), at step four, the ALJ found that Dudley could not return to her past relevant work. *Id.* at 48. The ALJ then proceeded to step five, where based on Dudley's RFC, age, prior work experience, and the VE's testimony, the ALJ concluded that Dudley is

"capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including as a housekeeping cleaner, parking lot attendant, or mail clerk. *Id.* at 49. Therefore, the ALJ concluded that Dudley was not disabled from the alleged onset date through the date of his decision.

## V. Analysis

Dudley argues that the ALJ erred by failing to (1) give proper weight to Dudley's treating physician, Dr. Michael Wiedmer; (2) use substantial evidence to deny her benefits based on the errors in the vocational expert ("VE") testimony; (3) consider Dudley's excellent work history in assessing her credibility; and (4) consider Dudley's testimony about the side effects from her pain medication. Doc. 13. For the reasons discussed below, the ALJ's decision is due to be affirmed.

### A. Whether the ALJ erred by giving limited weight to the opinion of Dudley's treating physician, Dr. Michael Wiedmer.

Dudley argues that the ALJ failed to provide good cause for discrediting Dr. Weidmer's opinion on Dudley's ability to work and do household chores. Doc. 13 at 24-25. The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440). "Good cause exists 'when []: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*

*v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1241). The ALJ must clearly articulate the reasons for not giving substantial or considerable weight to a treating physician's opinions. *Id.* Moreover, although a physician's opinion is relevant evidence, ultimately "[a] claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (citing 20 C.F.R. § 404.1527(d)(2)).

As part of her contention that the ALJ improperly assessed her treating physician's opinion, Dudley accuses the ALJ of bias, asserting that the ALJ "has a tendency to be skeptical in approving only 14% of the cases he has disposed in September 2014 – September 2015." Doc. 13 at 26. This contention has several flaws. First, there is a "presumption that hearing officers [serving in a quasi-judicial capacity] are unbiased." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). To rebut this presumption, Dudley has the burden to demonstrate a "conflict of interest or some other specific reason for disqualification." *Id.* And if Dudley had such evidence, she should have presented it first to the ALJ and moved for his disqualification rather than making unfounded allegations before this court. Second, as Judge R. David Proctor found when another claimant raised similar allegations, a comparatively low approval rate "alone is not enough to overcome the presumption that ALJ Lassiter is unbiased." *Putman v. Colvin*, No. 4:16-CV-

0061-RDP, 2016 WL 5253215, at *5–6 (N.D. Ala. Sept. 22, 2016), *subsequently aff'd sub nom. Putman v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 929 (11th Cir. 2017). Third, comparative approval rates are of no help to this court, which is tasked with reviewing whether the ALJ's decision in *this case* is supported by the substantial evidence. *See Martin*, 894 F.2d at 1529. To conduct this analysis, the court reviews the current record before it. The court would invite reversible error if it factors the ALJ's approval rates in other cases in deciding whether the substantial evidence in *this* record supports the ALJ's decision. Finally, Dudley has offered no support or explanation of this ALJ's purported bias, and consequently, the court has no basis to doubt the ALJ's impartiality. *See Schweiker*, 456 U.S. at 195.

Turning now to the ALJ's analysis, a review of the ALJ's decision indicates that the ALJ gave (i) "partial weight" to Dr. Wiedmer's opinion that "[Dudley] is unable to do any kind of work at all . . . [or] return to any type of gainful employment given her combination of problems;" (ii) "little weight" to the opinion that Dudley "can barely do minor household chores because of the difficulty with ambulation;" and (iii) "some weight" to the opinion that Dudley "seek treatment from a pain clinic as a possible solution to Dudley's reported pain." Doc. 13 at 26 (citing R. 710, 733, 738, 740). Dudley argues that the ALJ failed to show good cause in discrediting Dr. Wiedmer's opinions, mistakenly relied on the non-treating and non-examining state physicians, and substituted his own judgment for

that of Dr. Wiedmer. Doc. 13 at 25-32. The record does not support Dudley's contentions.

### 1. Opinion on Dudley's Ability to Work and Pain Clinic Referral

The ALJ discredited Dr. Wiedmer's opinion on Dudley's ability to work, as an initial matter, because the "determination of disability . . . [is] reserved to the Commissioner." Doc. 7-5 at 47. Indeed, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 894 (11th Cir. 2013) (citing Id. §§ 404.1527(d)(1), 416.927(d)(1)). Moreover, the ALJ noted that many of Dr. Wiedmer's opinions about Dudley's inability to work lack any reference to the medical record and are unsupported by the objective evidence. For example, Dr. Wiedmer's opinions consist of one sentence statements: February 2015 — "To Whom It May Concern, Amey Dudley is not able to return to her job due to her medical condition," R. 740; March 2015 — "To Whom It May Concern . . . Amey Dudley Patient is unable to work," R. 783; and a pre-filled form consisting of June and September 2014 medical observations, in which Dr. Wiedmer circled, without further explanation, that Dudley has "moderately severe" impairments and will "miss more than 5" days of work per month, R. 741. Because these opinions were "not accompanied by objective medical evidence or [are] wholly conclusory," the ALJ had "good cause

[in] discount[ing] a treating physician's report." *Roth v. Astrue,* 249 F. App'x 167, 168 (11th Cir. 2007).

The ALJ also noted that the entire medical record failed to substantiate Dr. Wiedmer's opinion that Dudley cannot work in *any* job. As the ALJ noted, just a few months before opining that Dudley cannot work, Dr. Wiedmer noted during a September 2014 visit that Dudley "is walking fairly well today" and "exhibited no clonus or Babinski reflex."[1] R. 710. Dr. Wiedmer also noted during this visit that Dudley appeared "fairly emotional and depressed," but opined that "some of [the chronic pain syndrome] seems a little bit out of proportion to what [Dr. Wiedmer is] seeing . . . [and there] is fairly high emotional overlay." *Id.* Rather than recommend Dudley for surgery, Dr. Wiedmer instead noted that he could "do no more from an orthopedic standpoint" and referred Dudley to visit a pain clinic for further relief. *Id.* As the ALJ noted, this referral suggests that alternative methods of treatments existed. Doc. 7-5 at 47. And, as the ALJ pointed out, despite making these entries, Dr. Wiedmer concluded a few months later that Dudley could no longer return to her old job (which involved lifting heavy objects), and then one month later, without any explanation, that Dudley could no longer work at any job.

---

[1] "Babinski reflex is a 'reflex action of the toes, normal during infancy but abnormal after 12 to 18 months of age; after locomotion begins, it is indicative of abnormalities in the motor control pathways leading from the cerebral cortex and is widely used as a diagnostic aid in disorders of the central nervous system. It is elicited by a firm stimulus (usually scraping) on the sole of the foot, which results in dorsiflexion of the great toe and fanning of the smaller toes. Normally such a stimulus causes all the toes to bend downward.'" *Mitchell v. Berryhill,* No. 1:16CV18-WTH-CJK, 2017 WL 4583720, at *6 (N.D. Fla. Aug. 9, 2017), *report and recommendation adopted,* No. 116CV00018WTHCJK, 2017 WL 4582270 (N.D. Fla. Oct. 12, 2017).

*See* R. 740-741.   These entries that the ALJ cited support the ALJ's decision that

Dr. Wiedmer's own record belies his contention that Dudley is unable to work.

*See Lewis,* 125 F.3d at 1440 ("[T]here is good cause where the treating physician's

opinions are inconsistent with their own medical records.").

Other contemporaneous medical records cited by the ALJ also confirm the

inconsistency in Dr. Wiedmer's opinion.  In March 2015, Registered Nurse Ellen

Miller pointed out that, despite numbness in Dudley's left leg, Dudley still

maintained good strength.  R. 782.  That same month, in a Patient Anesthesia

Record Dudley filled out, Dudley indicated that she "can walk up two flights of

stairs or walk one block without chest pain or shortness of breath." R. 856.  Later

that month, Dr. Thomas Wilson, a neurosurgeon, noted that Dudley had "moderate

left lumbar tenderness," her "straight leg raise is positive on the left leg at 40

degrees," her "strength is grossly intact," and an MRI revealed a "far lateral disc

herniation at L3-4 on the left."  R. 767-768.  Ultimately, Dr. Wilson performed far

lateral intertransverse microdiscetomy surgery on Dudley.  R. 767.

Three weeks later, Dudley reported that she struggled with "left-side, lower

back pain and left anterior thigh pain." R. 784. However, Physician Assistant

Ronald Philley noted in Dudley's treatment plan that "her symptoms are quite

common given the type of procedure and duration of her preoperative symptoms."

R. 785.  The next entry in the record is from April 2015, when Dr. Wilson noted

during a physical exam that Dudley had "slight weakness in her left quadriceps"

and "decreased sensation anterolateral thigh and lower leg." R. 794. Finally, in August 2015, Dr. Weston Walker reported that Dudley had a "normal curvature" of the spine, "markedly tender left side of surgical scar," and back pain that was in "stable" condition, and recommended that Dudley continue with her steroid medications with an additional "exercise regimen [such as] yoga." R. 813.

Noticeably absent from the record is a medical opinion, besides Dr. Wiedmer's, that Dudley has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(I)(A). *See also Barnhart v. Walton,* 535 U.S. 212, 217 (2002) (holding claimant's impairments and inability to work must last for continuous period of at least twelve calendar months). Accordingly, the court will not second guess the ALJ's decision to reject Dr. Weidmer's medical opinion in light of the "good cause" and specific justification the ALJ provided for his decision. *Howard v. Soc. Sec. Admin., Comm'r,* No. 18-10800, 2019 WL 1096805, at *3 (11th Cir. Mar. 8, 2019) (finding the ALJ had good cause to discount the opinion of a doctor whose opinion "consisted of a multiple-choice 'clinical assessment of pain' form, with no room for [the doctor] to explain how medical evidence supported his responses," "relied mainly on Claimant's subjective reports of pain as a basis for treatment," and conflicted with other objective medical evidence in the record).

### 2. Opinion on Dudley's Ability to do Minor Household Chores

Dudley contends also that the ALJ erred in rejecting Dr. Wiedmer's opinion from October 2014 that Dudley "can barely do minor household duties because of [her] difficulty [in] ambulating." R. 733. The ALJ gave this opinion little weight because Dr. Wiedmer provided no clinical or objective medical evidence to support his opinion. Doc. 7-5 at 46. Indeed, the opinion only references Dudley's subjective complaints of "back pain running down the hips and legs" and her failed attempts in all "modalities of treatment." R. 733. In addition to the lack of objective medical evidence, the ALJ also discredited this opinion because Dr. Wiedmer recommended that Dudley seek alternative treatment from a pain clinic five months later, doc. 13 at 26 (citing R. 710, 738, 740), which the ALJ stated suggested that "there could be a possible solution to [Dudley's] reported pain that would allow her to function." Doc. 7-5 at 47. Also, the ALJ pointed out that the opinion was contrary to Dudley's own report three days earlier that she is "independent" with her activities of daily living, and Dudley's testimony and Self-Function Report that she was able to make frozen meals, sandwiches, breakfast, read the Bible, attend church, talk on the phone for two hours a day, help make dinner, help her son with homework, and watch television. *Id.*; R. 181-187, 374.

Finally, the ALJ noted that medical records from Drs. Joy Gavino and John Nwogu, whom Dudley visited three days before Dr. Wiedmer issued his opinion, also discredit Dr. Wiedmer's opinion. The record shows that Dudley informed Dr.

Gavino that she had a "depressed mood" and felt "hopeless" due to her back and joint pain. R. 725-726. However, Dr. Gavino's objective findings indicated that Dudley was "awake, alert, oriented and in no acute distress," and that her "back had a normal curvature, no tenderness, and no muscle spasm." R. 727. The next day, Dr. Nwogu noted that Dudley's "muscle strength, tone, [and] gait" are "normal" and that Dudley did not appear in "acute distress." R. 686-688. The ALJ specifically highlighted this inconsistency, noting that Dr. Wiedmer opined that Dudley could no longer do any household chores just three days after Dr. Gavino found that Dudley had "5 out 5" in "motor strength" and "no tenderness in her back." R. 591, 725.

To summarize, the record supports the ALJ's finding that while Dudley's impairments might cause some discomfort in the workplace, her impairments do not preclude Dudley from engaging in *all* work activity. In light of the inconsistences in Dr. Wiedmer's medical source opinion and the record, the ALJ assigned the proper weight to his medical opinions. *See Black v. Soc. Sec. Admin., Comm'r,* No. 18-12291, 2019 WL 978784, at *6 (11th Cir. Feb. 27, 2019) ("ALJ's decision was supported by substantial evidence because [the doctor's] opinions lacked explanations and were not entirely consistent with his own notes or other evidence in the record"). Therefore, Dudley has failed to show that the ALJ erred in assigning weight to Dr. Wiedmer's opinion.

**B. Whether the VE Testimony Failed to Consider Dudley's Limitations**

Dudley also maintains that the ALJ failed to fully account for Dudley's impairments and limitations in the hypotheticals the ALJ posed to the VE. As Dudley puts it, the ALJ failed to "consider all of [Dudley's] limitations" during the VE testimony at the hearing and show that Dudley could perform other gainful employment in the economy. Doc. 13 at 32. It is settled law that "unless there was vocational expert testimony concerning the availability of jobs for a person with the claimant's educational level, work skills and experience and physical limitations, the decision of the ALJ, based significantly on the expert testimony, would be unsupported by substantial evidence." *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). There is no error here because Dudley only makes a broad assertion, without any reference to specific records, that the medical evidence overwhelmingly supports the opinion that she cannot work and the VE testimony did not fully consider Dudley's impairments. Doc. 13 at 24. But, "other than this initial statement, [Dudley] fails to argue this issue, nor present medical support for this argument, and thus, [this court] find[s] the issue waived." *Camarillo v. Colvin*, 2013 WL 4789244, at *4, n.2 (M.D. Fla. Sept. 9, 2013).

Moreover, the record shows that the ALJ posed a series of hypotheticals to

the VE that accounted for Dudley's RFC.[2] The hypotheticals included the following questions about an individual who: (1) is "limited to medium work activity" who can sit and stand for at least two hours without interruption and at least six hours over the course of an eight hour work day; (2) is "limited to light work activity" who can sit and stand for at least two hours without interruption and at least six hours over the course of an eight hour work day; (3) is "limited to light work activity" who can sit and stand for at least one hour without interruption and at least six hours over the course of an eight hour work day; (4) is unable to sit, stand, or walk for a total of at least six hours over a court of an eight hour work day; (5) is expected to miss three or more days of work per month; (6) needs additional break times throughout the work day in addition to customary breaks to recline, elevate feet, or nap; (7) has the same impairments, pain, medication, and medication side effects, including fatigue; and (8) is unable to "sustain concentration, persistence, and pace for at least an hour and a half." R. 191 – 196.

---

[2] The ALJ determined that Dudley can "perform light work" with limitations on standing, sitting, climbing, crawling, climate, working in unventilated areas and unprotected heights, and hazardous machinery. Doc. 7-5 at 44-45 (The ALJ described in detail Dudley's RFC to "perform light work as defined in 20 C.F.R. 404.1567(b) except [she] can stand and/or walk for at least one hour without interruption and at least six hours over the course of an eight-hour work day. [She] can sit at least two hours without interruption and at least six hours over the course of an eight-hour work day. [She] cannot climb ropes, poles, scaffolds, or ladders. [She] can occasionally climb ropes and stairs. [She] can occasionally balance, stoop, kneel, and crouch. [She] cannot crawl. [She] can frequently use her lower extremities for the operation of foot controls. [She] can occasionally work in humidity, wetness, and extreme temperatures. [She] can occasionally work in dusts, gases, odors, fumes, and poorly ventilated areas. [She] cannot work with operating hazardous machinery. [She] can occasionally work while exposed to vibration. [She] can occasionally operate motorized vehicles.").

These hypotheticals belie Dudley's contention that the ALJ failed to fully account for her impairments in the questions the ALJ posed to the VE.

Ultimately, "[t]he hypothetical questions need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1270 (11th Cir. 2007) (internal citation omitted). Moreover, the ALJ is not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported. *Id*. ("The characteristics that the administrative law judge omitted are among those that [the claimant] alleged to suffer but were either not supported by her medical records or were alleviated by medication."). In light of the ALJ's RFC findings, which are consistent with the medical record (as explained in detail in Subsection A, *supra*), the court cannot conclude that the ALJ erred – especially since the ALJ's hypotheticals were comprehensively detailed. *Kunz v. Comm'r of Soc. Sec*., 539 F. App'x 996 (11th Cir. 2013). Therefore, whereas here, Dudley has failed to cite to objective evidence showing that Dudley is unable to sit or ambulate for any length of time, the court finds that the ALJ did not err in denying Dudley benefits based on the VE's testimony.

### C. Whether the ALJ Failed to Properly Consider Dudley's Past Work History to Assess Her Credibility

Dudley argues also that the ALJ failed to give proper weight to Dudley's "excellent work history" in the ALJ's credibility finding. Doc. 13 at 37. Basically,

Dudley "does not attack the ALJ's credibility determination directly, but instead argues that because the ALJ did not make an explicit finding regarding [her] excellent work history, the rest of his credibility determination is invalid." *Roane v. Berryhill,* 2017 WL 3613989, at *6 (S.D. Ga. July 31, 2017), *report and recommendation adopted*, 2017 WL 3613040 (S.D. Ga. Aug. 22, 2017). To support her contention, Dudley cites to cases from other circuits which have found that a claimant's prior "good work record" justifies an inference of substantial credibility. *See, e.g., Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980). But, "the Eleventh Circuit has not had occasion to rule on the issue" of whether an ALJ's failure to consider a claimant's "lengthy and consistent work record" in evaluating a claimant's credibility is erroneous. *Mahon v. Comm'r of Soc. Sec.,* 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017). Moreover, the circuit has upheld an ALJ's credibility determination that is supported by substantial evidence even when a plaintiff has a good work history. *See Edwards,* 937 F.2d at 584. In other words, excellent work history alone may be insufficient to enhance a claimant's credibility. Therefore, because the ALJ is not required to "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . enable[s] [the reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole," the record does not support a finding that the ALJ erred in determining Dudley's credibility without reference to her prior work ethic. *Dyer*, 395 F.3d at 1211 (alterations and quotations omitted). *See*

*also Evans-Sweny v. Comm'r of Soc. Sec.,* 2019 WL 949302, at *7 (M.D. Fla. Feb. 27, 2019) ("While Plaintiff is correct that an excellent work history may enhance a claimant's credibility, it does not necessitate remand in this case where the ALJ based her credibility finding on a careful analysis of the medical record and Plaintiff has failed to show the credibility finding was otherwise erroneous.").

### D. Whether the ALJ Failed to Properly Consider Dudley's Testimony on Pain and Side Effects of Medication

Lastly, Dudley suggests that the ALJ overlooked his duty to elicit and adequately consider testimony about her ability to do sedentary jobs in light of her medications' side effects, which include drowsiness and nausea. Doc. 13 at 39-42. Dudley is generally correct that an ALJ may consider a claimant's subjective symptoms, which include the effectiveness and side effects of medications. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). However, "[a]s an initial matter, the heightened duty to develop the record that [Dudley] cites from *Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981), applies when claimants are not represented; in this case [Dudley] was represented at the administrative hearing by counsel who had the opportunity to elicit any relevant testimony about [her] limitations." *Burgin v. Comm'r of Soc. Sec.,* 2010 WL 2510650, at *9 (M.D. Fla. June 21, 2010), *aff'd*, 420 F. App'x 901 (11th Cir. 2011). Indeed, here, Dudley's lawyer questioned her about her medication side effects: "It makes me drowsy,

makes me sleep, and it makes me nauseated [in] my stomach – makes me sick [in] my stomach." R. 174.

Ultimately, "the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled," and Dudley must still "introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Walker,* 404 F. App'x at 366–67. Relevant here, the medical records fail to indicate that Dudley regularly complained of side effects that are severe enough to be disabling alone or in combination with her other impairments. In reviewing the record, the court found only medical entries in which Dudley complained that she "has taken medication without relief," R. 747, and records related to concerns about overuse of pain relievers. R. 990-993. These included a record from August 2015, when Dr. Ron Pitkanen prescribed Cymbalta, which has "independent pain properties" and could "help with [Dudley's] depression." R. 991. Thereafter, in January 2016, Dudley noted that Cymbalta caused her nausea in the morning, and Dr. Pitkanen recommended that she start taking the medication in the evening. R. 995. When Dudley complained that her pain medications offered "minimal-to-moderate benefit," Dr. Pitkanen still recommended that "at this time, [Dudley] will continue with [her] medication regimen." R. 996. To the extent that there are records that describe disabling side effects, the court could not find them, and Dudley has not directed the court to any. Therefore, "[b]ecause there was no evidence [Dudley]

was experiencing side effects from [her] medication[s], the ALJ was not required to make findings regarding [Dudley's] side effects when assessing [her] subjective complaints." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011). *See also Lowery v. Soc. Sec. Admin., Comm'r*, 729 F. App'x 801 (11th Cir. 2018) (affirming the ALJ who found "that limitations to which claimant testified were far in excess of those which reasonably would be expected from the objective clinical findings and were not consistent with all of the other evidence of record.").

## VI.    Conclusion

For the reasons stated above, the court concludes that the ALJ's determination is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching his decision. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 20th day of March, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE